Thank you, Your Honor. Good morning, and may it please the court. My name is Samantha Kuhn and I represent Mr. Joseph in this appeal. As the court knows, this appeal arises from a turnover order that the district court issued requiring the transfer of nearly all of Mr. Joseph's BOP prison funds to the clerk of court for payment toward his restitution obligation. That order was issued pursuant to a motion by the government that they filed more than 20 years after the judgment was entered, and the government relied solely on a statutory lien that arose under 18 U.S.C. 3613C in order to ask for that relief. Over Mr. Joseph's objection, the district court granted the motion concluding that the government was, quote, entitled to the relief it requests based solely on 3613C. Now, that ruling was legally erroneous for a number of reasons, the first of which is that the government's lien under 3613C necessarily expired 20 years from his judgment date. And that's clear from the plain text of the statute, from the history of the statute, and from its context. And it's also the only coherent understanding of that provision. The provision states that the lien arises on the entry of judgment and continues for 20 years or until, and then it provides a series of circumstances where the liability might cease to exist. Either it being satisfied, remitted, set aside, or being terminated under subsection B, which includes through the death of the debtor. So, that's the only coherent and logical explanation of this statute. And for that reason alone, the court has to reverse the district court's order, because the district court relied solely on the finding that the government had an existing lien under 3613C. Now, the government claims in its brief that its own lien is coterminous with a defendant's liability to pay restitution, which is provided under 3613B. But that argument finds no support in the text, context, or history of the statute. And in fact, Congress specifically separated out liability and lien provisions when it passed the MVRA. In the pre-MVRA version of the statute, 3613, it actually did provide for coextensive liabilities and liens and said that they continued for 20 years or until the death of the debtor. Through the MVRA, Congress broke it apart and made liability a separate provision from the creation of the lien for the government. The obligation to pay didn't arise until the supervised release began, is that correct? No, the obligation to pay starts when the judgment is issued and it continues until, do you mean, sorry, before the MVRA? He did make payments. Yes, he was making payments through his BOP account in accordance with the BOP's setup. When do you say the lien attached? I'm sorry? When do you say the lien attached? The lien attached upon entry of the judgment, so in 2001, and then it expired 20 years from the judgment date. Now, under the government's… What do you do with the fact that 3613C uses the words lien and liability interchangeably, it appears? Wouldn't that also rope in 3613B? So, the provision in 3613C, I don't believe, uses lien and liability interchangeably. In 3613C, it discusses the creation of the lien, and then it includes liability being satisfied, remitted, set aside, or terminated as a scenario which the lien can expire. But it also has that 420 years provision being the alternative scenario. And so, to construe it the way the government argues, which would basically be to say, well, it necessarily goes until liability ends, then all it would need to say would be the lien arises on entry of the judgment and continues until liability is terminated. But that's not what Congress said. There was language in the statute that says it's the later of 20 years from the judgment or 20 years after release or something like that. Correct. That's in 3613B, which is the termination of liability provision, which does not reference the lien, except to say that for restitution judgments upon the death of the debtor, a written release of liability is what ends the lien in that scenario. But if liability and lien are interchangeable in the statutory scheme, do you lose? If that were true, but I don't think there's any evidence in the statutory scheme. So what we have to do, though, is we have to credit your argument. We have to assume that prisoners with longer prison terms are going to have the least ability to repay these liens because they won't have earning capacity. And so they serve over 20 years. They get out. They're free of that obligation. I think that's an argument the government suggested in its brief, but I don't think that's a correct understanding. Is that what would happen? No, Your Honor, because the liability continuing for 20 years beyond their release allows the victim to continue to enforce and seek its own enforcement of its judgment. So we put the onus on the victim at that point. The victim can obtain its own lien using an abstract of judgment to which it's entitled under the MVRA. And so the victim continues throughout the liability term to have the ability to get that money from the defendant. There's also provisions in the MVRA or, sorry, in 3664 that allow the court to adjust payment schedules depending on changes in circumstances and to provide other avenues in order to ensure the victim is getting paid. The government's lien is not the sole avenue. And so I think that's what's confused in the government's brief is to suggest that the government's lien is the only mechanism by which a victim can be made whole. The MVRA and Congress created this as one possible avenue. Isn't the restitution part of the sentence? Yes, the restitution judgment is considered part of a sentence. That seems distinct from what the victim may or may not be. I mean, the victim could bring an action, I guess, at the outset or even before there's a criminal judgment, right? They could seek civil redress or whatever. So, I mean, they're not time-limited like the government would be in meeting out a sentence of imprisonment followed by supervised release and what have you. Right. And that's, I mean, I guess that's one point. It just doesn't seem sensical to me to release the government's lien automatically after 20 years from the judgment when the victim might have more flexibility if they took the onus on him or herself to try to get recompense outside the restitution order. I mean, especially if it's part of a sentence. Well, I think that raises another issue that the government's argument is brief that I think needs to be made clear that a proper consideration here is not policy concerns or determinations by this court about what might have been the most effective way to carry out the MVRA and ensure that victims get paid. Congress used the phrase for 20 years specifically in this statute. And so regardless of whether government or the court believes that it would be better to have the government have a more extensive lien in order to ensure victims get paid, that's not a proper consideration for statutory interpretation. The Supreme Court and this court have repeatedly said that it's not the court's place to try to effectuate Congress's policy decisions or to interpret statutes in a way that complies with the best policy views. Couldn't agree more, but doesn't this help us divine what the statute's text means? No, because it renders for 20 years, not even superfluous and redundant isn't even the right term for what for 20 years would mean in the statute because of the government recognizes it would then make it redundant with a certain for a certain subset of offenders, people who don't get prison terms. But you would have to ignore that phrase entirely for it to even make logical sense. It can't be the case that the term goes for 20 years, but then also goes beyond 20 years, but then can also end sooner if liability is satisfied. There's just no coherent way to read the statute that gives effect to for 20 years. And so the government asked the court to write out that phrase entirely, which the court can't do under statutory interpretation canons. Was he still making payments? Yes, he was continuing to make payments. And how many years had he been making payments? I believe it's in the briefing. I can't recall when it began, but whenever the IFRP plan was set up with the BOP, he began making payments. And I think they increased at some point. He was making payments past 20 years. Correct. He's continued to continuing to pay into that restitution payment. And you're not contesting the authority for his continuing to make payments. Correct. Because he still is liable for the amount under subsection B. And these are not payments being made to the U.S. Attorney's Office or the government. It's being made to the clerk of court for payment toward his restitution. So he's continuing to fulfill his obligation and his liability to pay restitution, but it's not an enforcement. Paying through the direct plan to the clerk of court is not an enforcement by the government pursuant to a lien. And so shifting to the government's additional arguments, as we discussed a second ago, their primary argument here is policy-based. They're urging the court to basically ignore a phrase in the statutory lien term in order to make it effectuate what it believes the proper enforcement mechanism would be under the MVRA, which this court has made clear is not appropriate. The government's only other argument in support of its interpretation essentially urges this court to adopt dicta from the Third Circuit to avoid creating conflict. And obviously, you know, this court's obligation is to interpret the statute correctly. And so that can't, you know, the court has no obligation and should not be adopting errors made by other courts. But the Third Circuit's language in Norwood, which is the case the government cites, is also clearly dicta. And it was included, as the government recognizes, in a statutory background section in a case that was about an ex post facto claim that's not at issue here. In that case, the debate was about whether the pre-MVRA version 3613's liability provision should apply to the defendant or if the post-MVRA liability provision should apply. And the court ultimately determined that under the ex post facto clause, the pre-MVRA version had to apply. So it never reached the question of what the scope of the government's lien was. It simply included that line in a statutory background section, which appears to have been incorporated from an amicus brief that was filed in that case. The only other circuit where any kind of arguable support was referenced for the government's position was the Eleventh Circuit's unpublished case in Pickett. In that case, it was a pro se appellant. And the court stated that it had, quote, done its best to make sense of the many arguments in the brief. But there's no indication he ever made an argument about the scope of the government's lien. And in fact, the opinion indicates that he only argued that the restitution judgment was unenforceable under a time bar in 3663F, which is inapplicable here. So that court also did not reach the question before this court. As far as I can tell, this is a question that has not been addressed by any court definitively in the circuits. And so the two cases the government cites about avoiding a circuit split, Alfaro and Adam, are completely different situations. Those are cases where there's four or five circuit court of appeals that have addressed the direct issue before this court and have reached a certain conclusion with no decisions to the contrary. And in both of those cases, this court independently reached the same conclusion based on its analysis of the arguments. So with respect to that issue, you know, the government clearly believes that a lengthier lien duration would more effectively promote the goals of the MVRA. But whether this court agrees or disagrees with that position, it doesn't change the meaning of Congress's words. And so because the government's automatic lien expired after 20 years, the district court's order is erroneous and needs to be reversed because it relied solely on that lien provision. Now, the second independent reason why the district court's ruling was legally erroneous is because even if the government had timely pursued enforcement under a valid lien, it didn't cite any federal or state law mechanism for enforcing civil judgments. And that's required under 3613A. The government relied solely on its assertion of an existing lien under 3613C, and the district court did the exact same thing in granting the requested turnover order. But the plain text of 3613A in this court's case law makes clear that the government must pursue enforcement under a valid federal or state law for enforcing civil judgments. And in every case where this court has affirmed an order to enforce restitution pursuant to 3613C, the government has relied on or operated under a specific federal or state mechanism, whether it's the Federal Debt Collections Procedures Act or the tax code statutes for foreclosing on property or some state law for enforcing civil judgments. And every case affirming a turnover order in this context has involved a situation where the government pursued enforcement under the Texas state turnover statute, which is not applicable to this case here because it was in Louisiana. That includes RAND, which the government cites extensively in the district court proceedings below and in this proceeding. In reviewing the district court's ruling in RAND, the court explained that it has recognized Texas's turnover statute as one of the apparatuses by which criminal debt may be secured and adopted the rubric utilized by Texas state law from where the turnover mechanism originates. Does Louisiana have a similar statute? The government cites what they referred to as a Louisiana turnover statute in its reply brief or its response brief. That is not similar to this case. If you read the text of it, it is for enforcing writs. It's effectively a contempt proceeding, as it indicates in the title. And there has to be a writ before the court can proceed with the turnover order or whatever is proceeded under that statute. So it's not the same. Before you run out of time, let's address this last argument about whether the government, assuming the turnover order is timely, whether they can take the entire balance of the prison account. Oh, I'm sorry. So you mean the abuse of discretion argument? Yes, I mean because the order basically encompassed the entire, it was $18,000 and change. Right. And you contend that they couldn't do that. Right. So this court has said that a district court's turnover order or ruling in this manner has to be reversed if it's arbitrary and unreasonable. The court didn't give any case-specific reasons for selecting that amount. First, it relied on an erroneous conclusion that the government was entitled to the relief request, i.e., the government is entitled no matter what to have all of the funds transferred. And its only reason for exercising discretion to hold back $400 was to cite other district court cases that had similarly held about the same amount of money. And so in this scenario, there was no information about or no addressing of the court about Mr. Joseph's reasons for needing the funds in his prison account, his need for money for phone calls, his need for hygiene products, the fact that he was on an IFRP plan where he had to make routine payments and would have to cease to be part of that plan under the BOP rules. And there was no discussion of the need for the money. I mean, these are two financial institutions. I'm not sure if they even exist anymore, frankly. But there was no discussion of any kind of balancing of needs for the money with Mr. Joseph's interest in the money or consideration of the alternatives he proposed about different proportions of the funds to be transferred. And so the court's decision about how much to transfer was arbitrary in that manner. And my time is about to conclude, so if there's no further questions, I'll address the rest on rebuttal.  So, good morning. Peter Mansfield with the U.S. Attorney's Office here on behalf of Appellee United States of America. The district court in this case correctly interpreted the Mandatory Victims Restitution Act to impose a lien duration that is coextensive and coterminous with Joseph's liability to pay the underlying restitution, which is the term of his ongoing incarceration plus an additional 20 years. That has not expired yet. Further, the district court did not abuse its discretion in issuing a turnover order to have funds in Joseph's inmate account applied towards his due and owing victim restitution. The United States argument the district court's holding here is a textual one firmly rooted in the plain language of the MVRA, 18 U.S.C. 3613C, which incorporates by reference the provisions of the Judge Wilson, as gets to the heart of your questions. 18 U.S.C. 3613C says the lien for restitution arises on the entry of judgment and continues, and I'm going to paraphrase here with an ellipsis, until the liability is satisfied, remitted, set aside, or is terminated under subsection B and express incorporation by reference importing the full freight of subsection B into subsection C. This is not uncommon in statutory drafting. So what does subsection B say? The liability to pay restitution shall terminate on the date that is the later of 20 years from entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution. Let's combine those two things together. We do this in our brief. Once you do so, the plain language of this is clear and is unambiguous, and it must be applied as written. The lien arises on the entry of judgment and continues until the liability is terminated on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution. Mr. Joseph is still in prison. He still has about 15 years left on his term. When he is released, that starts the clock for an additional 20 years. This plain language interpretation of the MVRA is supported by the MVRA's context and purpose. As my opponent has recognized, liability to pay restitution and lien duration have always been coextensive since the beginning of the first restitution statute, even before the MVRA's adoption in 1996. If Congress in 1996 actually intended to divorce these two concepts and to put them in two separate buckets, we're going to have liability to pay that's the term of incarceration plus 20 years, but a lien that is a flat, hard deadline at 20 years and not a day later. It is certainly very odd to have utter silence on that massive change. No statements in the legislative history and certainly no cases that support my opponent's position in the almost 30 years since the MVRA was adopted. Very telling. Every time Congress has legislated on restitution, it is always augmenting, increasing, and strengthening victims' rights. It's strengthening the statutory protections given to victims, and it is increasing the availability of the restitution remedy. And Congress requires DOJ, the Department of Justice, to enforce victim restitution on behalf of private victims of crime. We don't just collect restitution debt owed to the federal government. To the contrary, the vast majority of the restitution we collect is owed to private victims of crime. We are the muscle that enforces the court's order. Again, let's look at the history. Victim Witness Protection Act, 1982. Restitution is discretionary. It's up to the court, up to the sentencing judge. The MVRA was adopted in 1996. The M part of the MVRA is Congress saying restitution is now mandatory for crimes against property under Title 18. Then there's the Justice for All Act and the Crime Victim Rights Act of 2004, granting more remedies to victims. Victims now have a private right of action to contest whether they have been consulted by the government with respect to their restitution. The Federal Debt Collection Procedures Act, 1990. A uniform system of procedures to enforce debt, which also applies to restitution. And then most tellingly, 2016. The most recent time Congress has amended or written on restitution in the MVRA. They extended the lien duration to go past the debtor's debt. The lien duration extends until the government releases the debtor's estate from the lien and from the liability to pay. Again, increasing, elongating liens and liability. And to the extent the court sees any ambiguity at all, and we say there's not. Judge Morgan got this 100% right. It's the plain language of the statute. But if you see some ambiguity between the interplay of subsection C and B, we invite you to consider an unusually specific legislative history. A Senate report which was officially adopted by Congress as the official legislative history for the MVRA. That Senate report says a restitution order constitutes a lien on defendant's property in favor of the victim. And this MVRA extends the period of a lien pursuant to a final restitution to 20 years after the defendant's release from incarceration. It's quoted on pages 20 through 21 of our brief. And finally, we have the weight of authority. And admittedly, there's not that much. Now, I would say the reason there's not that much is because no defendant has been creative enough to make this argument before. And it is a creative textual argument, albeit meritless. But the few circuits that have looked at this issue squarely on the side of the government here call it different. I was going to ask you, actually, what we have in our circuit is this Mann case that's a district court case, right? Is there any other case that informs what we do here? We have been unable to find any. We're looking to other circuits as well as the reasoning. I guess the district court here adopted the reasoning in Mann. That's correct. So Mann, Western District of Texas, unpublished case, but certainly the reasoning and the holding are 100% correct. What if counsel's argument that the Texas turnover statute, clearly not an issue here because we're in Louisiana, and the government didn't travel under a similar or cite a similar statute here? Well, we didn't cite the Louisiana turnover statute. Judge Morgan grounded her authority to issue the turnover order right in the text of the MVRA, 3664M, as in Michael, 1A. And that says an order of restitution may be enforced by the United States by all other available and reasonable means. All other available and reasonable means, incredibly broad language. But if counsel's opposite says, well, okay, but you've got to cite the means, you've got to travel under something and cite a statute, is there currency to that argument? I don't believe so. The court has an inherent authority to enforce lawful orders issued pursuant to its jurisdiction. The court had authority to issue the restitution order, not just authority. It had the responsibility to do it, the M part of the MVRA. And the court is aware that there is a large balance of debtors' property in an account held by the government. The court has the inherent authority to invoke a turnover order as an equitable remedy. Judge Wilson, turnover orders are incredibly common in bankruptcy court. Bankruptcy judge says, debtor, turn over your property to the trustee. Turn over the property to the estate. And the courts have that inherent authority to issue turnover orders. Consider it kind of like a common law offset. Mr. Joseph owes restitution the government's required to collect. The government has Mr. Joseph's money sitting in an account the government administers. We didn't just unilaterally do an offset and issue him a letter saying we're taking your money and applying it to your debt. We applied to the district court. And that's precisely what the Louisiana revised statute contemplates. Go to the district court, ask for permission. And Mr. Joseph was afforded all the due process he's owed here. He was appointed very talented counsel for the federal public defender's argument. They marshaled whatever arguments they could on his behalf. The district court considered it and issued a detailed, thorough order and reasons, grounding her authority to issue the turnover order in the MVRA, 18 U.S.C. subsection 3664M. And, Judge Wilson, I want to speak to this idea that all the court's turnover authorities issue from Texas. That's more of an incidental, almost coincidental feature than it is dispositive. Of course, Texas is the largest state in this circuit. Very talented AUSAs and U.S. attorneys' offices that are pursuing debt very aggressively as they should. But if this case issued in Mississippi or Louisiana, the 3664M authority of a federal district judge is the same. And that is more than sufficient to authorize the issuance of a turnover order. And these are not unique to this circuit, by the way. We've cited some authority from district courts across the country, and other circuits have approved and affirmed turnover orders as a bit of issue. So we weren't required, necessarily, to root it in the revised statute. Admittedly, we didn't cite it until our brief. But we think the court's inherent authority to order the turnover remedy was more than sufficient. If I could double back to the lean duration argument just to very, very quickly touch on a few problems that Mr. Joseph's interpretation creates. Namely, it violates numerous canons of statutory construction. First, it renders 3613C's incorporation of 3613B completely meaningless. I guess I want to talk about 1673 and what appears to be some limitation on the amount that you can get in a turnover order. It seems to limit it to 25%. You're talking about the Consumer Credit Protection Act? Yes. 15 U.S.C. 1673? Yes. So a couple points on that, and I appreciate you bringing that up, Judge Grace. First of all, Joseph never asserted the Consumer Credit Protection Act in district court. It appeared for the first time and is briefed to this court. So we think there's a forfeiture issue going on there, first of all. Okay. So that's the primary point. Secondly, that statute applies only to garnishments. This isn't a garnishment. It's a turnover order, distinguishing point number one. And when you're garnishing, it says you can only take 25% of the disposable earnings of the debtor in a given work week. So it's clearly contemplating an ongoing, periodic garnishment of an active employee who is earning ongoing, periodic wages. Well, isn't that what's happening here? It is not. This is a turnover order. No, not the order. What's going on with the prisoner and the wages? Isn't he earning wages? Aren't they called prisoner's wages? That is correct. Is it weekly? Monthly? I don't know how often those wages are paid, actually. But it's periodic? Periodic. Periodic. All right. If we were garnishing prospectively, Mr. Joseph's wages, admittedly, would be limited to 25%. But the issue we have here is that prison account constituted not just his wages, but they asserted in district court it also contained payments from family members that were deposited into that account. And also, he evidently self-published a book. But it wouldn't be difficult. He got royalties on a book. Wouldn't it be difficult to call out from among that amount what was wages and what wasn't? I don't know if it would be difficult or not, but this is another problem here. The Supreme Court has said once money leaves the employer's hand, is paid to the employee, and deposited into account, it essentially loses its character as wages once it's in the control of the employee, of the debtor, in his account. And that's a case called Kokoska v. Belford, regrettably not cited in our brief, 417 U.S. 642. And there's other cases as well. Poff from the Ninth Circuit, 727 Federal Appendix 249. We can submit a 28-J on this. That have looked at the Consumer Credit Protection Act and held that it does not apply to turnover orders because it is not a wage garnishment of periodic compensation paid for personal services. Does the government garnish prison wages? Typically, we do not use the remedy of garnishment. We use the turnover. Would you or does it not apply? I don't think it applies for this reason. The money is already in the hands of the government. A garnishment applies when you are seeking to restrain or seeking to seize money in the hands of a third party. Well, I mean, my paycheck's in the hands of the government also. So is yours. I mean, they could still garnish it. How's that different? I'm just grappling with the idea of can the government elect to be prospective and garnish a prisoner's prison wages? Or can the government wait and seize the account? Or is there a difference or a distinction? I think I appreciate it. On a prospective basis, yes, I can foresee a set of circumstances where a garnishment of a prison account could occur. But I don't think I think it's a square peg in a round hole because the DOJ actually administers prison accounts. We would be garnishing ourselves. We would be issuing process to ourselves. And then another arm of DOJ is filing an answer to the garnishment asserting how much money. It's incredibly circular thing and somewhat collapses upon itself. The turnover order is the better remedy. It's the more straightforward remedy. And it still affords a debtor due process. But Judge Wilson, to directly answer your question, if we were seeking a prospective seizure of prison wages that Mr. Joseph was earning on a continuing prospective basis, garnishment could potentially be an option. But this was not prospective. This is retrospective. The money had been earned over the course of 20-something years. It was sitting in the account. So in your view, the only limit on a turnover order is the amount of restitution owed? In the district court's discretion. So any amount, as long as it doesn't exceed the amount owed, is just fine? No limits? That is correct. But the reason for that, while it may sound draconian, is because the 25 percent. It sounds draconian. The 25 percent limit of the CCPA does not apply. And our charge is to collect full and timely restitution and to do that aggressively. And, yes, the victims here are banks. But sometimes victims are the little old ladies in the Ponti scheme, right? So there's no equivocation there. Counsel suggested that one or more of the banks may no longer exist. I don't remember that in the briefing. I don't know. Certainly the record does not speak to that point one way or the other. And I don't know personally as an officer of the court if they exist or not. But certainly banks, usually if they go under, they're taken over by another bank. And the FDIC puts them in receivership and sells it off. So if the concern is where this $18,000 is going to go, we can tease that out in district court by figuring out who the successors and interests are if, for some reason, the victim is no longer in business. Judge Graves, last point on the CCPA, if I could. The congressional findings for the 25 percent limitation is to avoid disrupting an ongoing employment relationship between the debtor and his employer. That purpose doesn't apply because the debtor is in prison. It's to try to prevent debtors rushing into bankruptcy court by wage garnishments that might take $75, $80, $85, all of their wages. That's not an issue here. Again, the debtor is in prison. Bankruptcy is not a concern. And the third congressional findings, we need to provide sustenance to our debtors and enable him to have sufficient means for the cost of living on a day-to-day, week-to-week, month-to-month basis. Again, all of Mr. Joseph's expenses, at least in terms of root and board. Well, that's all well and fine, but I don't know that that's in the text of the statute. In other words, if it's wages prospective, they'd be subject to the 25 percent cap, correct? That is correct. Whether they're in prison, whether they're working, wherever they're working. Is that correct? I believe that's correct. Okay. Well, and so the question, I guess, that we were getting to, the government can elect to do it prospectively via garnishment or retrospectively being the account balance. But if the account balance is derived from weekly wages, would that retrospective route also be subject to the 25 percent cap? I don't believe so. I'm going to again fall back on that Kokoska case from the Supreme Court and the cases that have applied, 417, United States, 642. And I will be happy to submit the 28J, because I realize this is an issue of concern to the court that perhaps needed more detailed briefing on it. But our position, and to be abundantly clear, is that the CCPA does not apply to a turnover order. It does not apply to a retroactive accumulation, even if it was funded in some part through wages. Once they hit the account, they lose that character. And we are not interrupting. We're not inserting ourselves into the relationship between the employer and the employee. And those congressional findings, I believe, are actually in the statute itself, perhaps in a section or two before 1673. And Kokoska talks through these various findings underlying the CCPA to support its holding, that in that case, it was a tax refund. And of course, the refund basis was wages that were diverted to Treasury. It was put into the debtor's account, and it was seized for an IRS levy, I believe, to the full 100 percent. And the debtor tried to interpose the CCPA to limit that seizure. The Supreme Court, unanimous decision. And it's from 1974, I believe it's Justice Berger, said the CCPA has no application of tax refunds in your account. What about Rand? How does that case flow into this discussion? Rand's a good case for us, no doubt about it. And I believe Chief Judge Richmond was on that case. Rand approved the issuance of a turnover order. I believe the amount left in the account was a couple hundred dollars in that case as well. And it walked through the various ways that the government can get the turnover order, justify the turnover order, the MVRA. There's a provision as well, 3664K, a material change in economic circumstances of the debtor post-sentencing. Certainly, most prisoners don't have $18,000 in their prison account. I believe that is a material change from what is typically a very low balance, most likely. So the district court could have relied on that, and Rand speaks to that very point. There's a lot of different ways to get to the same result here. But again, that just speaks to the fact that Judge Morgan carefully considered the arguments and did not abuse her discretion. What of counsel's argument that the court didn't explain why the $400 carve-out, why not zero, why not $1,000? Was there enough reasoning there to support what the court did? I believe there was. Look, the bulk of the opinion concerns lien duration and the authority to issue the turnover order. The judge says we're going to leave $400 in, which shall remain in the defendant's inmate trust account for prison expenses. And she cites other courts faced with motions identical to the government's here, exercise of discretion to leave incarcerated defendants funds to purchase necessities through the commissary, citing two district court cases. The court exercises its discretion to do the same here. And I believe if you do survey some of the federal court turnover order cases, you will find that typically they will leave $300, $400, $500 in the prison account. I believe there's a monthly limit on how much you can spend at the commissary per month anyway. It might be around $200. And of course, this doesn't affect his ability to earn wages going forward, which can then go back into his account to be spent in the commissary. I see my time is up. If there's no further questions from the court, the district court did not abuse its discretion in this case, so we urge the court to affirm. Thank you. I'd like to address a few points that the government made. First of all, the government argued that it's coincidental that the cases issuing turnover orders from this court were all in Texas because Texas is a big state. But every single one of those decisions actually cites the Texas turnover statute. And that statute specifically says that a court can issue an order, can order the judgment debtor to, quote, turn over non-exempt property that is in the debtor's possession pursuant to a motion from the judgment creditor. And so it's not a coincidence that each of those cases that have ordered or affirmed turnover orders are actually citing the Texas turnover statute. That includes RAND. That includes DEAL. That both involved BOP accounts and Texas turnover statutes. The government has cited no case whatsoever where it was permitted to proceed exclusively under 3613C's lien provision without any other statutory mechanism, no statutory enforcement mechanism. And the government argues that the court had inherent authority to order this in order to effectuate its restitution judgment. I don't think that there's a basis for that in the statute. It would render all of these different procedures meaningless. But also under Hughes, this court has found it inappropriate to rely on alternative arguments and means when the district court clearly relied solely on 3613C. In Hughes, the court specifically said in addressing, I believe it was a request or an alternative request under 3664K, the court said, although it is dubious whether the gradual accumulation of prison wages constitutes a material change in economic circumstances, we know that the district court's turnover order was not based on 3664K, and we find no language demonstrating that it intended to adjust and modify the payment schedule. So Hughes suggests and supports the idea that this court can't just find a new mechanism or affirm on some alternative reason that the court could have given but did not. Additionally, as far as RAND goes, I believe it supports our position and not the government's. That enforcement was pursued within 20 years of the judgment date, and the court found that it remained subject to the government's lien and could be acquired by the government to make RAND's victims whole. And it specifically found that the government proceeded under the practices and procedures for enforcement of a civil judgment under the Texas apparatus. Additionally, the government omitted or in citing the Senate report, the government says that supports their argument because Congress said that the amendments provide that a restitution order constitutes a lien on the defendant's property in favor of the victim and extends the period of a lien pursuant to a final restitution to 20 years after release from incarceration. But that omits a critical portion of that. There's actually a parenthetical, and it says, it provides that a restitution order constitutes a lien on the defendant's property in favor of the victim, and then in parentheses, or in favor of the United States in certain circumstances, and extends the period of the lien pursuant to a final restitution to 20 years after release. And so that, to me, makes very clear in the legislative history that Congress envisioned the lien for the government and the lien for the victim to be different terms and to operate differently. They're not one and the same. And finally, to address the last or one of the points from the government, the government argues that the statutory history has always had it coextensive with the lead between the lien and liability and suggest that we agree with that position. We do not. As we've argued in the brief prior to 1996, there was one provision that said when the liability and the lien expired and it treated them the same. And then in 1996, Congress specifically broke liability and lien into separate provisions and provided different terms for those. And so that, again, further supports our reading, which is the only coherent, logical reading of 3613C. And if there's no further questions, I can lose my time.